Arthur R. Angel, sbn 214611
1305 N. Poinsettia Place
Los Angeles, CA 90046
(323) 656-9085 (P)
(323) 417-4704 (F)
arthurangel@sbcglobal.net
Attorney for Plaintiff Booth Family Trust
And all others similarly situated

FILED
2009 JAN -2 PM 3:27
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ______

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

The Booth Family Trust, On Behalf of Itself and All Others Similarly Situated

Plaintiff,

vs.

JOSEPH E. WHITTERS, MICHAEL L. EMMONS, WALTER W. FASTER, JOSHUA H. LEVINE, KATHERINE S. NAPIER, MARGARET H. JORDAN, EDWARD S. NORTHUP, JOSEPH A. NEWCOMB, BURT E.ROSEN AND MENTOR CORPORATION

Defendants.

CV09-00010 SJO (MANx)

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND INJUNCTIVE RELIEF**

Plaintiff, by its attorneys, submits this Complaint based upon breach of fiduciary duty against the Defendants named herein.

## INTRODUCTION

1. This is a stockholder class action on behalf of the holders of Mentor Corporation ("Mentor" or the "Company") common stock against Mentor and certain of the Company's officers and/or directors for injunctive and other appropriate relief arising out of Defendants' efforts to sell Mentor via an unfair process and at a grossly unfair process designed not to maximize shareholder value but to dispose of valuable Company assets pursuant to terms which are unfair to the Company's public shareholders (the "Proposed Acquisition"). Plaintiff seeks to enjoin the Proposed Acquisition.

2. In pursuing this unlawful plan to cash out Mentor's public stockholders for grossly inadequate consideration of $31.00 per share in cash consideration, each of the Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing. Instead of attempting to negotiate a transaction reflecting the highest price reasonably available for the Company's shareholders, Defendants spent considerable effort tailoring the Proposed Acquisition for their benefit.

3. In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

a. Act independently so that the interests of Mentor's public stockholders will be protected, including, but not limited to, adequately considering any superior offers for the Company;

b. Adequately ensure that no conflicts of interest exist between Defendants' own interests and their fiduciary obligation to maximize stockholder value or, if

such conflicts exist, to ensure that all conflicts be resolved in the best interests of Mentor's public stockholders;

c. Rescind the termination fee of $31,000,000.00, "top-up" and "no shop" provisions in the merger agreement;

d. Fairly and fully disclose all material information to the Company's shareholders concerning the Potential Acquisition, or any alternative thereto;

e. Provide current information on the availability and impact of the costs associated with this Proposed Acquisition; and

f. Consider and disclose strategic alternatives to the announced sale of Mentor.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: i) Mentor maintains its principal place of business in this District; ii) one or more of the Defendants either resides in or maintains executive offices in this District; iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and engaging in a conspiracy in violation of their

fiduciary duties owed to Mentor; and iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

7. Plaintiff The Booth Family Trust ("Plaintiff") is, and at all times relevant hereto was, a shareholder of Mentor. Plaintiff The Booth Family Trust, through its trustee, is a citizen of the State of New Jersey.

8. Defendant Mentor is a California Corporation headquartered at 201 Mentor Drive, Santa Barbara, California 93111.

9. Mentor develops, manufactures, licenses and markets a range of products serving the aesthetic market, including plastic and reconstructive surgery. Our products include breast implants for plastic and reconstructive surgery, capital equipment and consumables used for soft tissue aspiration for body contouring (liposuction), and facial aesthetics products. The Company purchases finished products and certain raw material components from third party manufacturers and suppliers. The Company's cost of goods sold represents raw materials, labor and overhead, the cost of third party finished products, freight expense, royalties, amortization of certain intangibles, and the cost associated with our product warranty programs. Gross margins may fluctuate from period to period due to a variety of factors, including changes in the selling prices of our products, the mix of products sold, changes in the cost of third party finished products, raw materials, labor and overhead, fluctuations in foreign currency exchange rates, changes in warranty costs and warranty reserves, the purchase accounting treatment of acquired inventory, amortization and changes in manufacturing processes and yields.

10. Defendant Michael L. Emmons ("Emmons") has served as a director of the Company since 2004. Emmons is a citizen of the State of California.

11. Defendant Walter W. Faster ("Faster") has served as a director of the Company since 1980. Faster is a citizen of the State of California.

12. Defendant Margaret H. Jordan ("Jordan") has served as a director of the Company since 2007. Jordan is a citizen of the State of Texas.

13. Defendant Joshua H. Levine ("Levine") has served as the Company's President, Chief Executive Officer ("CEO") and a director since June 2004. Levine is a citizen of the State of California.

14. Defendant Katherine S. Napier ("Napier") has served as a director of the Company since 2007. Napier is a citizen of the State of Illinois.

15. Defendant Burt E. Rosen ("Rosen") has served as a director of the Company since 2007. Rosen is a citizen of the State of California.

16. Defendant Joseph E. Whitters has served as Chairman of the Board since 2004. Whitters is a citizen of the State of Illinois.

17. Defendant Edward S. Northup ("Northup") serves as the Company's Vice President and Chief Operating Officer since February 2007. Northup is a citizen of the State of California.

18. Defendant Joseph A. Newcomb ("Newcomb") serves as the Company's Vice President, General Counsel and Secretary since June 2006. Newcomb is a citizen of the state of California.

19. The Defendants named above in ¶¶10-18 are sometimes collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants and Mentor are sometimes collectively referred to herein as the "Defendants."

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

21. The Individual Defendants, because of their positions of control and authority as directors or officers of Mentor, were able to and did, directly and indirectly, control the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Mentor, each of the Defendants had access to adverse non-public information about the financial condition, operations and future business prospects of Mentor, including, without limitation, the wrongdoing which the Individual Defendants caused Mentor to engage in.

22. At all material times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Mentor, and was at all times acting within the course and scope of said agency.

23. To discharge their duties, the officers and directors of Mentor were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of Mentor. By virtue of such duties, the officers and directors of Mentor were required, among other things, to:

(a) manage, conduct, supervise and direct the business affairs of Mentor in accordance with federal law, state and federal rules and regulations and the charter and bylaws of Mentor;

(b) neither violate nor knowingly permit any officer, director or employee of Mentor to violate applicable federal laws, rules and regulations and state law; and

(c) refrain from using their status as directors and major shareholders to the detriment of the shareholders and the Company.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

24. In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

25. During all relevant times hereto, Defendants, and each of them, initiated a course of conduct which the was designed to and did: (i) hide/conceal positive information concerning the Company in furtherance of the scheme to sell Mentor at an unfair price and based on an unfair process and (ii) permit Johnson to attempt to unfairly buyout the public shareholders of Mentor. In furtherance of this plan, conspiracy and course of conduct, Defendants took the actions as set forth herein.

26. Each of the Defendants herein aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. The Defendants' acts of aiding and abetting included, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise and common course of conduct complained of herein.

## THE PROPOSED ACQUISITION

27. On December 1, 2008, the Company announced a definitive agreement whereby Mentor will be acquired for approximately $1.07 billion in a cash tender offer. The estimated net value of the transaction is based on Mentor's 34.6 million fully diluted shares outstanding, plus

estimated net debt at the time of closing. Johnson & Johnson ("Johnson"), through its subsidiary will make a cash tender offer to purchase all outstanding shares of common stock of Mentor for $31.00 for each share of Mentor common stock tendered in the offer, without interest and less any required withholding taxes. The transaction is expected to close in the first quarter of 2009.

28. The Merger Agreement contains certain termination rights of Johnson and the Company and provides that, upon the termination of the Merger Agreement under particular circumstances, the Company would be required to pay Johnson a termination fee equal to $31 million. There is no corresponding termination fee should Johnson fail to close the Proposed Acquisition. The excessive nature of the termination fee operates as a disincentive to other potential bidders or interested parties to explore a potential transaction with Mentor. Consequently, the chilling effect on any subsequent offers as a result of the termination fee will preclude shareholders from reaping the greatest value for their interest in the Company.

29. Moreover, the Board agreed to give Johnson a "top-up" option. Under this option, the Company has the right to acquire newly issued Company's stock that would be equal to 19.9% of the outstanding Company stock or one share more than 90% of the outstanding Company stock, which ever is less. The purpose of the "top-up" option is to give Johnson the ability to complete the Proposed Acquisition as a short-form merger, which can be effected without shareholder approval if Johnson owns or controls over 90%. Thus, even though only 70.1% of the Company's stock would be owned by or tendered to Johnson, the "top-up" option gives Johnson the right to silence the owners of the remaining 29.9% of Mentor stock and complete a short form merger.

30. Furthermore, unlike many merger agreements, the Proposed Acquisition does not contain a "go shop" provision designed to seek out other potentially superior proposals. Instead, section 5.0 of the Merger Agreement, entitled "No Solicitation", precludes the Company and its representatives from taking such potentially value-maximizing steps, as follows: "(a) The Company

shall not, nor shall it authorize or permit any of its Subsidiaries to, or authorize any of their respective directors, officers or employees or any investment banker, financial advisor, attorney, accountant or other advisor, agent or representative retained by it or any of its Subsidiaries or Representatives to, directly or indirectly through another person (and it shall instruct, and cause each of its Subsidiaries to instruct, each such Representative not to), (i) solicit, initiate or knowingly encourage, or take any other action designed to, or which would reasonably be expected to, facilitate, any Takeover Proposal[1] or (ii) enter into, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any person any information with respect to, or otherwise cooperate in any way with, any Takeover Proposal."

31. Defendants attempted to make it appear as though this was a fair price. Defendants seized this opportunity to sell Mentor at a basement price. Approximately five years prior to the announcement of the Proposed Acquisition, 74% of the time the Company's stock traded above the offer price. Regrettably, due to recent events in the stock market, the Company's stock price is currently depressed. However, the growth prospects of the Company remain strong.

32. The consideration to be paid to the shareholders in connection with the Proposed Transaction is unfair and grossly inadequate because, among other things:

(a) the consideration agreed upon by Defendants did not result from an appropriate

[1] The term "Takeover Proposal" means any proposal or offer from any person relating to, or that would reasonably be expected to lead to, (i) any direct or indirect acquisition or purchase, in one transaction or a series of transactions, of assets (including for the purpose of this definition the outstanding equity securities of the Subsidiaries of the Company) or businesses that constitute 15% or more of the revenues, net income or the assets of the Company and its Subsidiaries, taken as a whole, or 15% or more of any class of equity securities of the Company, (ii) any tender offer or exchange offer that if consummated would result in any person or group beneficially owning 15% or more of any class of equity securities of the Company, or (iii) any merger, consolidation, business combination, recapitalization, liquidation, dissolution, joint venture, binding share exchange or similar transaction involving the Company or any of its Subsidiaries pursuant to which any person or group or the shareholders of any person or group would own 15% or more of any class of equity securities of the Company or of any resulting parent company of the Company or businesses or assets that constitute 15% or more of the revenues, net income or the assets of the Company and its Subsidiaries, taken as a whole, other than, in the case of each of clauses (i), (ii) and (iii), the transactions contemplated by the Merger Agreement.

consideration of the value of Mentor or consideration of strategic alternatives including valuations of Mentor's subsidiaries as independent companies;

(b) Plaintiff and the other stockholders will receive potentially less than 9% premium for their shares in Mentor despite the fact that Mentor's stock valuation increase has far outpaced Johnson's valuation; and

(c) the Individual Defendants have placed their own interests ahead of those of the Company's public shareholders by agreeing to a Proposed Acquisition which offers a meager premium to those shareholders but which will enrich Defendants significantly upon consummation of this "change in control" transaction.

33. Matthew Karnitschnig of *The Wall Street Journal*, addressed the lower valuations given to Mentor's share price in his December 11, 2008 article titled, The New Deal: M&A Game Shifts. The article stated in relevant part:

> Consider Johnson & Johnson's recent agreement to acquire Mentor Corp. for $1.07 billion. J&J appeared to have paid a hefty premium – 92% over Mentor's closing price before the deal was announced.
>
> But J&J's $31-per-share offer was also 23% below another traditional measure used in negotiations to calculate a company's value – the target's 52-week high.

34. Susan Kelly and Lewis Krauskopf noted how Johnson took advantage of a stock market depressed to all-time lows. Their article, J&J to Buy Breast Implant Firm Mentor stated in relevant part:

> The acquisition will give J&J a high-margin product in breast implants just as growth is set to slow due to new generic competition for J&J's longtime major product, the schizophrenia drug Risperdal, and looming generic threats to another big seller, its epilepsy medicine Topamax.
>
> ***"They [Johnson] are taking advantage of beaten-up stock prices and they have a growth gap to fill in 2009,"*** said Jeff Jonas, portfolio manager with Gabelli Healthcare and Wellness Trust, which holds J&J shares.

(Emphasis Added).